IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**FRANCES Z. WHEAT, AS PERSONAL**                                                **PLAINTIFF**
**REPRESENTATIVE AND FOR/ON BEHALF**
**OF THE ESTATE AND WRONGFUL DEATH**
**BENEFICIARIES OF SARAH KATHERINE**
**WHEAT, DECEASED**

**V.**                                              **CIVIL ACTION NO.: 3:13-CV-00087-SA-DAS**
                                                                  **LEAD CASE**

**JOHN HOWARD STRICKLAND, JR.,**
**JOHN HOWARD STRICKLAND and**
**JENNIFER STRICKLAND**                                                       **DEFENDANTS**

CONSOLIDATED WITH

**FRANCES Z. WHEAT, AS PERSONAL**                                                **PLAINTIFF**
**REPRESENTATIVE AND FOR/ON BEHALF**
**OF THE ESTATE AND WRONGFUL DEATH**
**BENEFICIARIES OF JOHN WILLIAM**
**WHEAT, DECEASED**

**V.**                                              **CIVIL ACTION NO.: 3:13-CV-00088-SA-DAS**

**JOHN HOWARD STRICKLAND, JR.,**
**JOHN HOWARD STRICKLAND and**
**JENNIFER STRICKLAND**                                                     **DEFENDANTS**

## MEMORANDUM OPINION

Presently before the Court are Motions for Summary Judgment [109, 99] filed by Defendants Jennifer Strickland and John Howard Strickland. Upon due consideration of the motion, responses, rules, and authorities, the Court finds as follows:

*Factual and Procedural Background*

On October 27, 2012, Defendant John "JR" Howard Strickland, Jr. ("JR") was traveling east on Highway 6 in Oxford, Mississippi when his vehicle crossed the median and collided with

a vehicle being driven by John William Wheat. Both John William Wheat and his sister Sarah Katherine Wheat, a passenger in the vehicle, died as a result of injuries sustained in the crash. The vehicle driven by JR, a Chevrolet Tahoe, was owned by his parents, Defendants John Howard Strickland and Jennifer Strickland ("the Stricklands"). JR later pled guilty to one count of aggravated DUI[1] in connection with the accident and is currently serving a term of incarceration in the custody of the Mississippi Department of Corrections.

Plaintiff Frances Z. Wheat initially brought two wrongful death actions[2] in the Circuit Court of Lafayette County, Mississippi, alleging claims of negligence and negligence per se against JR and negligent entrustment against the Stricklands. Defendants timely removed to this Court, discovery ensued, and the Stricklands have now moved for summary judgment.[3] Plaintiff has responded and the Stricklands' motions are now ripe for review.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

---

[1] A toxicology report performed shortly after the accident showed that JR had chemicals found in Prozac, Valium, marijuana, and a propellant commonly used in canned air dusters in his system. JR had been prescribed Prozac by his physician but did not have a prescription for Valium. He admitted to buying the Valium from another college student, to regularly smoking marijuana, and to "huffing" air canisters.

[2] Wheat brought one action as the personal representative and for/on behalf of the estate and wrongful death beneficiaries of Sara Katherine Wheat and another as the personal representative and for/on behalf of the estate and wrongful death beneficiaries of John William Wheat.

[3] JR has not moved for summary judgment.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Analysis and Discussion*

Negligent Entrustment

The Plaintiff has alleged that by authorizing their son JR to drive their Chevrolet Tahoe, the Stricklands are liable for negligent entrustment. Mississippi law defines negligent entrustment as follows:

> One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Sligh v. First Nat'l Bank of Holmes County, 735 So. 2d 963, 969 (Miss. 1999) (quoting Restatement (Second) of Torts § 390). The Mississippi Court of Appeals has interpreted

Mississippi law as requiring the following elements to establish a prima facie case of negligent entrustment:

> (1) that the defendant supplied a third party with the chattel in question for the use of the third party;
> (2) that the supplier of the chattel knew or should have known that the third party would use the chattel in a manner involving an unreasonable risk of harm; and
> (3) that harm resulted from the use of the chattel.

Kitchens v. Dirtworks, Inc., 50 So. 3d 388, 392 (Miss. Ct. App. 2010) (citing Bullock Bros. Trucking Co. v. Carley, 930 So. 2d 1259, 1262 (Miss. Ct. App. 2005)). Further, the Mississippi Supreme Court has held that "[t]he paramount requirement for liability under the theory of negligent entrustment is whether or not [the] defendant had a right to control the vehicle." Sligh, 735 So. 2d at 969 (quoting Broadwater v. Dorsey, 688 A.2d 436, 442 (Md. 1997)).

In the case at bar, the Stricklands contest only the second element, arguing that they did not know nor should they have known that JR would use their Tahoe in a manner involving an unreasonable risk of harm. However, Plaintiff contends that JR's history of drug and alcohol abuse, as well as mental instability, should have put the Stricklands on notice that JR should not be trusted to operate their vehicle in a safe manner.

It is undisputed that JR had several incidents involving alcohol or drugs prior to the accident at issue of which the Stricklands were aware. One such incident occurred while JR was in high school[4] and involved Jennifer Strickland finding a small amount of marijuana in JR's room. JR denied that the marijuana belonged to him and both Jennifer Strickland and JR testified that he was not punished as a result. Though JR testified that the marijuana had in fact belonged to him and that he smoked marijuana from that time until the time of the accident, the

---

[4] JR's testimony is unclear regarding this event. He first testified that the Stricklands caught him smoking marijuana during his sophomore year in high school but then testified that the only time the Stricklands caught him with marijuana was when Jennifer Strickland found it in his room. The Stricklands and JR's brother testified that this event occurred during JR's senior year.

4

Stricklands, JR, and JR's brother all testified that the Stricklands were unaware of his marijuana use until after the 2012 accident.

It is undisputed, though, that the Stricklands knew from the time JR was a senior in high school that he drank alcohol. While on a family trip to Mexico, JR was allowed to drink alcohol without consequence from the Stricklands because, at eighteen years old, he was of legal age for that country. JR also drank in front of the Stricklands during his freshman and sophomore years at the University of Mississippi.[5] During his sophomore year, JR was charged with public intoxication in Oxford. Jennifer Strickland testified that JR was not punished beyond being told that the Stricklands were disappointed in him and that "he best not do it again." Then, JR was arrested in Oxford in the fall of 2011 and charged with driving under the influence. He was later convicted and attended court-ordered alcohol education classes, but again was not punished by the Stricklands.[6] Though JR's license was suspended for ninety days as a result of the DUI conviction, the Stricklands continued to allow him to possess one of their vehicles and Jennifer Strickland testified that she assumed JR continued to drive during that time.

Deposition testimony indicates that JR began experiencing depression and anxiety symptoms sometime after his DUI conviction in the spring of 2012. JR's mother testified that, while still at the University of Mississippi in March 2012, JR called her and requested that she take him to a doctor because he felt sad all the time, had some anxiety, and had lost interest in school. JR spent that summer at home in San Antonio living with his parents. Jennifer Strickland testified that, while at home in Texas, she took JR to see Dr. Shawna Deeves for

---

[5] The Stricklands testified that they attended a parents' weekend hosted by JR's fraternity in Oxford, Mississippi in the spring of 2010 and again in the spring of 2011 where they witnessed JR drink alcohol despite his being under twenty-one years of age.

[6] Though others testified that the Stricklands most likely punished JR, Jennifer Strickland testified that they did not punish him on the advice of JR's attorney at the time that JR had been punished enough by having to attend the alcohol classes mandated by the court.

treatment of his depression-like symptoms and that Dr. Deeves gave him a prescription for Celebrex. Though Jennifer Strickland testified that she felt JR needed to go back to Dr. Deeves for continued treatment, JR missed his next two appointments and did not return. Just before his return to Oxford, Mississippi, JR again asked Jennifer Strickland to take him to a doctor because of his continued mental and emotional issues. She testified that she took him to Dr. Stephen Ramirez, the family physician, who prescribed Prozac and recommended that JR follow up with a psychiatrist in Oxford upon his return to school.[7]

JR also testified that during the summer of 2012 before his return to Oxford, he discussed attending Alcoholics Anonymous and/or Narcotics Anonymous meetings with Cindy James, his aunt and a certified addiction professional. JR testified that he did not attend any meetings until after the accident but that he had recognized that he needed to go that summer and that the Stricklands knew about it. Cindy James also testified in her deposition that Jennifer Strickland called her in July 2012 and discussed a change in JR's attitude and her belief that he was depressed. At JR's sentencing hearing for the aggravated DUI charge, James testified that the Stricklands contacted her in July 2012 for a professional opinion as an addictions professional and that they discussed JR's mental health and "his drug abuse and use."[8] However, James also testified that she did not think JR had an alcohol abuse problem at the time and that she did not have the impression that he was using inhalants or any drugs other than those prescribed to him by a physician.

---

[7] Jennifer Strickland made an initial appointment for JR with Dr. Stephen Pannel in Oxford and JR saw him two or three times before the accident. It is undisputed that the Stricklands were aware JR was seeing Dr. Pannel. However, the Court notes that Dr. Pannel testified that he did not disclose any information related to JR's care to the Stricklands because he did not have JR's consent to do so.

[8] The Stricklands dispute that they had any conversations with James regarding JR before the accident at issue. However, the Court must "resolve factual controversies in favor of the nonmoving party." Little, 37 F.3d at 1075.

6

Once JR returned to Oxford in August 2012, he testified that the Stricklands were unaware of how much drinking and partying he was doing in the months leading up to the accident at issue. However, JR also testified that he used a credit card given to him by the Stricklands to purchase alcohol at bars and that John Strickland saw the statements, knew the charges were made at bars, and had conversations with JR about not spending and drinking too much. Further, Jennifer Strickland testified that JR continued to have emotional issues during the fall of 2012 and that she visited him in Oxford in September 2012 as a result. John Strickland also visited JR in Oxford in September 2012 for a football game and JR testified that John Strickland saw him get drunk that weekend.

The Stricklands contend that any knowledge they had of JR's alcohol use and emotional issues are irrelevant. They rely heavily on a Missisissippi Supreme Court case for the proposition that because there is no evidence the Stricklands knew that JR was huffing air canisters they cannot be held responsible for the harm caused by the accident. See Guardianship of Garvin v. Tupelo Furniture Market, 127 So. 3d 197 (Miss. 2013) (affirming the trial court's grant of summary judgment on a claim of negligent entrustment). However, the Court is not convinced that the holding in Garvin narrows the basis for liability to the extent argued by the Stricklands.

As in the case at bar, the plaintiff in Garvin based her claim of negligent entrustment in large part on the driver's past history of alcohol and marijuana use and of undergoing counseling. 127 So. 3d at 200. While not addressing the issue of the driver's counseling, the court held the lack of any "issue of material fact . . . that alcohol or other substances contributed to [the] accident" to be dispositive to the plaintiff's negligent entrustment claim. Id. at 201. The court held that "[i]t [wa]s undisputed that [the driver] was not under the influence of alcohol or drugs

(prescription or illegal) at the time of the accident" and that "the plaintiff's reliance on [the driver's] past alcohol and marijuana consumption [wa]s irrelevant" because "[s]uch conduct could be a basis for liability only if it was a proximate cause of the accident." Id.

Thus, it is clear that the court in Garvin considered only whether a driver's past use of alcohol or other substances is relevant when there is no evidence of *any* impairment at the time of the accident. The court in Garvin did not address whether evidence of a driver's history of use of one substance would be irrelevant where the driver was under the influence of a *different* substance at the time of the accident, and this Court is unwilling to make such a determination.

Likewise, the Court finds the Stricklands' reliance on Wright v. Weaver, 516 F. App'x 306 (5th Cir. 2013) to be misplaced. Importantly, Wright involved a negligent entrustment claim brought under Texas law and is therefore not binding on the Court's analysis of the instant case. See Crownover v. Mid-Continent Cas. Co., 772 F.3d 197, 201 (5th Cir. 2014) ("When . . . jurisdiction is based on diversity, we apply the substantive law of the forum state.") (quotation omitted). Further, Wright is of little persuasive value as the elements of a negligent entrustment claim under Texas law differ from Mississippi law. Whereas Mississippi law requires only "that the supplier of the chattel knew or should have known that the third party would use the chattel in a manner involving an unreasonable risk of harm," Kitchens, 50 So. 3d at 392 (citation omitted), Texas law requires that the owner of a vehicle entrusteded it "to an unlicensed, incompetent, or reckless driver." Wright, 516 F. App'x at 308 (citing Schneider v. Esperanza Transmission Co., 744 S.W. 2d 595, 596 (Tex. 1987)).

Under Texas law:

drivers have been determined to be reckless when their history of driving habits, traffic violations, or intemperance . . . exhibits a pattern of such deviations from lawful and proper manner of vehicle operation that if the entrustor had knowledge of the history, the entrustor should reasonably have anticipated that the driver

8

would operate the entrusted vehicle in a wrongful manner and thereby damage persons or property.

Id. (quoting Pesina v. Hudson, 132 S.W. 3d 133, 137-38 (Tex. App. 2004)). Accordingly, the Fifth Circuit considered the prior driving history of the driver in Wright, specifically whether the proffered evidence of prior events was too isolated, remote, or unrelated to driving to support the plaintiff's negligent entrustment claim. Id. at 309-11 (citing Aboushadid v. Ward, 2007 WL 397117, at *4 (Tex. App. Feb. 5, 2007) ("[I]ndividual or isolated driving violations are not evidence of recklessness or incompetence."); Pesina, 132 S.W. 3d at 137-38). The Stricklands have pointed to no Mississippi caselaw likewise requiring that prior incidents be driving related, not isolated, and not too remote in order to be relevant. Rather, Mississippi law requires only that "the conduct of which the supplier of the vehicle was or should have been aware had a direct correlation to the cause of the accident." Garvin, 127 So. 3d at 201.

JR testified that he used drugs and alcohol as a way of self-medicating his depression and anxiety symptoms. There is sufficient evidence that JR was under the influence of at least one substance at the time of the accident and that the Stricklands were aware of his past use of other substances, including his use of substances while operating a vehicle. Given JR's known use of alcohol and previous conviction for driving under the influence, as well as his emotional issues, the Court finds that a genuine issue of material fact exists as to whether the Stricklands knew or should have known that he would use their vehicle in a manner involving an unreasonable risk of harm. Accordingly, summary judgment is inappropriate.

"In any event, this court has the discretion, which it exercises here, to allow the plaintiff's claims to proceed to trial." Tieken v. Clearing Niagara, Inc., 1997 WL 88180, at *4 (N.D. Miss. Jan. 7, 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest . . . that the trial court may not deny summary

9

judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.") (further citation omitted)); see also Firman v. Life Ins. Co. of N. America, 684 F.3d 533, 538 (5th Cir. 2012) ("Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that the better course would be to proceed to a full trial.") (internal quotation marks and citation omitted). Accordingly, the Court DENIES the Stricklands' motions for summary judgment.

*Conclusion*

For the foregoing reasons, the Court finds the Stricklands' Motions for Summary Judgment [109, 99] are not well taken and are DENIED. A genuine issue of material fact exists as to whether the Stricklands knew or should have known that JR would use their vehicle in a manner involving an unreasonable risk of harm. A separate order to that effect shall issue this day.

SO ORDERED on this, the 6th day of March, 2015.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE